IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MANUEL TEJEDA ALVAREZ,  )
                        )
    Petitioner,          )   Civil No. 04-1685-TC
                        )
    v.                  )   FINDINGS AND
                        )   RECOMMENDATION
SHARON BLACKETTER,      )
                        )
    Respondent.         )
_____)

COFFIN, Magistrate Judge.

Presently before the court is the petition for habeas corpus relief (#1).

## BACKGROUND

Petitioner was convicted by a Umatilla County jury of Robbery in the First Degree, on the following relevant facts.

On November 28, 1995, Hermiston Police Officer Christopher Huffman received a call regarding a robbery at the Gotta Stop gas station. The attendant described the car used in the robbery

1 - FINDINGS AND RECOMMENDATION

as an older, grungy, red four-door Pontiac-type sedan. The car had a temporary license sticker in the back window with the numbers A22740.

On December 7, 1995, at 10:20 p.m., Officer Huffman received another call advising that the Gotta Stop gas station had been robbed again. The attendant reported that a Hispanic male with a moustache, wearing a black jacket and carrying a 9-millimeter pistol, had stolen the gas station wallet and fled the scene with another individual in an older, four-door brown Oldsmobile car with tinted windows, with no license plates but with a temporary sticker in the back. Huffman broadcast the description of the car over the police radio.

At 10:44 p.m., Huffman was informed by Officer Akers of the Stanfield Police Department that he was following a car that matched the description that Huffman had broadcast, and was about 10 miles from the location of the robbery. Huffman met up with Akers and together they initiated a stop of the car. As Huffman approached the car, he saw petitioner - a Hispanic male with a moustache - in the driver's seat. Huffman also noticed a wallet, matching the description of the one taken from the Gotta Stop gas station, partially sticking out from under the passenger's seat. Huffman was familiar with this type of wallet because his wife formerly worked at Gotta Stop. Akers recovered the wallet and handed it to Huffman, who opened it and found checks made out to Gotta Stop inside. Huffman arrested petitioner and the passenger, Jose Nebla, for robbery. The officers searched the car and found a 9-millimeter handgun under the back seat.

After being taken to the police station and advised of his <u>Miranda</u> rights in Spanish, petitioner gave the officers written consent to search his vehicle. Inside, the officers found a black jacket, a camera, some empty ammunition boxes, and another jacket. The camera contained pictures of petitioner holding various weapons.

2 - FINDINGS AND RECOMMENDATION

Petitioner was charged with two counts of first-degree robbery, one for the November 28 robbery and one for the December 7 robbery. Petitioner brought motions to suppress evidence, arguing, inter alia, that the stop was unlawful and all evidence obtained as a result was tainted. Those motions were denied for various reasons, and the case went to trial. At trial, petitioner raised an alibi defense to both robberies. Ultimately, petitioner was convicted of the November 28 robbery, but acquitted of the December 5 robbery.

Petitioner's conviction for Robbery in the First Degree was a conviction covered by Measure 11, Oregon's mandatory minimum sentences law, which was then undergoing vigorous challenges. The sentencing judge found Measure 11 to be unconstitutional, and instead of sentencing petitioner to the Measure 11 minimum sentence of 90 months, the judge issued a sentence of 55 months.

Petitioner appealed the conviction, and the state appealed the sentence. While petitioner's case was on appeal, the Oregon Supreme Court issued a decision in a different case, Huddleston v. Sawyer, 324 Or. 597 (1997), which found Measure 11 to be constitutional and which directed the sentencing judge in that case to enter a corrected judgment conforming with the Measure 11 mandatory minimums. Huddleston also noted that the proper way for the state to challenge a sentence it believed did not conform to Measure 11 was by a writ of mandamus, as opposed to by a direct appeal.

Following Huddleston, the state dropped its Measure 11 appeal in petitioner's case, and the case proceeded on petitioner's appeal. The parties ultimately filed a joint motion to remand for the purpose of hearing petitioner's second set of motions to suppress, which the trial court had not considered as it found them to be untimely. The parties agreed in that motion that should the motions to suppress be denied, "the trial court must reinstate the judgment of conviction." That

3 - FINDINGS AND RECOMMENDATION

motion was granted, and the case was remanded for such purpose.

On remand, the trial court denied petitioner's motions to suppress. The court reinstated the judgment of conviction, and sentenced petitioner to the Measure 11 mandatory minimum of 90 months.

Petitioner again appealed, and the Oregon Court of Appeals affirmed the judgment. State v. Alvarez, 168 Or.App. 393 (2000). The Oregon Supreme Court denied review. State v. Alvarez, 331 Or. 244 (2000). Petitioner sought post-conviction relief, but the PCR court denied relief. Petitioner appealed, but the Oregon Court of Appeals granted the state's motion for summary affirmance, and the Oregon Supreme Court denied review.

On November 18, 2004, petitioner filed the petition for habeas corpus relief presently before the court. In his petition, petitioner alleges the following grounds for relief:

1. Trial court error in not granting the motions to suppress evidence from stop of vehicle;

2. Trial court error in improperly resentencing petitioner to a harsher sentence; and

3. Ineffective assistance of counsel on appeal.

## DISCUSSION

**I.    Any federal claims in Grounds One and Two were procedurally defaulted.**

    **A.    Relevant law**

Federal habeas corpus relief does not lie for errors of state law. Estelle v. McGuire, 502 U.S. 62, 67 (1991). Rather, '[i]t is axiomatic that federal courts may intervene in the state judicial process only to correct wrongs of [federal] constitutional dimension." Wainwright v. Goode, 464 U.S. 78, 83 (1983). Indeed, a federal court may only entertain a petition for a writ of habeas corpus on the

4 - FINDINGS AND RECOMMENDATION

ground that the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Prior to raising a federal claim in a federal habeas corpus petition, a state prisoner challenging the lawfulness of his detention us required to exhaust all of his available state remedies. Failure to properly exhaust the his remedies in state court precludes a petitioner from maintaining the claims in federal court unless the petitioner demonstrates both "cause" for the failure to exhaust and "prejudice" resulting from such failure. Edwards v. Carpenter, 529 U.S. 446, 451 (2000); see also Wainwright v. Sykes, 433 U.S. 72 (1977).

**B.     Analysis in this case**

In his first ground for relief, petitioner contends that the trial court erred in denying his motions to suppress. However, when raising this claim in his state court proceedings, petitioner did not raise the claim as a federal claim; rather, he argued that his vehicle was stopped in violation of the Oregon standard for reasonable suspicion. Brief on Appeal (#25, Ex. 111) at 7. The case cited in support of his argument, State v. Brown, 31 Or.App. 501 (1977), was a state case that was resolved purely on the basis of state statutes, and did not reach a federal question. Further, the statutes cited by petitioner in his argument were all Oregon statutes. Petitioner's argument, and citations, did not adequately put the state courts on notice that petitioner intended to raise a federal constitutional claim. See Casey v. Moore, 386 F.3d 896, 913 (9th Cir. 2004) ("[U]nless the petitioner clearly alerts the court that he is alleging a specific federal constitutional violation, the petitioner has not fairly presented the claim."); see also Peterson v. Lampert, 319 F.3d 1153 (9th Cir. 2003). Because petitioner has did not fairly present any claim cognizable in this court to the state courts as

a federal constitutional claim, and has not shown good cause for such failure,[1] ground one of the petition should be dismissed as procedurally defaulted.

In ground two of his petition, petitioner asserts that the trial court improperly issued a lengthier sentence after remand. Again, on appeal petitioner only cited to a state law case, State v. Turner, 247 Or. 301 (1967), which dealt with the issue purely on a state procedural basis. Nothing in Turner or petitioner's argument would have notified the state courts that petitioner was raising a federal constitutional challenge. Casey, supra; Peterson, supra. As such, any federal claim in ground two of his petition was never exhausted, and is now procedurally defaulted. Ground two of the petition should be dismissed.

**II.    The state court's decision to deny relief on Ground Three is due deference under AEDPA, and should not be disturbed.**

    **A.    Relevant law**

        **1.    Applicable law on AEDPA deference**

Petitioner filed his original petition for habeas corpus relief after the effective date of the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Therefore, AEDPA applies to the review of his petition.

The relevant portion of AEDPA amended 28 U.S.C. § 2254 by adding the following:

> (d)    An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim -
>
>     (1)    resulted in a decision that was contrary to, or involved an

---

[1] Indeed, in his supporting brief, petitioner does not argue the procedural or substantive merits of grounds one or two at all; although he does not concede them, he "submits [them] for consideration on the existing record." Brief in Support (#30) at 7.

6 - FINDINGS AND RECOMMENDATION

> unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

State court determinations need not be deferred to in every case. See <u>Williams v. Taylor</u>, 529 U.S. 362, 389 (2000)("If, after carefully weighing all the reasons for accepting a state court's judgment, a federal court is convinced that a prisoner's custody . . . violates the Constitution, that independent judgment should prevail."). However,

> AEDPA plainly sought to ensure a level of deference to the determinations of state courts, provided those determinations did not conflict with federal law or apply federal law in an unreasonable way. Congress wished to curb delays, to prevent "retrials" on federal habeas, and to give effect to state convictions to the extent possible under law. When federal courts are able to fulfill these goals within the bounds of the law, AEDPA instructs them to do so.

<u>Williams</u>, 529 U.S. at 386 (citation omitted).

The <u>Williams</u> court also found different and independent meanings in the "contrary to" and "unreasonable application of" clauses of AEDPA. Under the "contrary to" clause, a federal court may only grant habeas relief if: (1) the state court applied a rule that contradicts the governing law set forth in Supreme Court caselaw; or (2) the case confronting the state court was materially indistinguishable from a Supreme Court decision yet the court nevertheless arrived at a result different from the Supreme Court precedent. <u>Id.</u> at 406. Under the "unreasonable application of" clause, a federal court may only grant habeas relief "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the

7 - FINDINGS AND RECOMMENDATION

facts of the prisoner's case." Id. at 412-13.[2] The evaluation of reasonableness is tested against an objective standard. Id. at 409-10. The Court also noted that:

> [T]he most important point is that an <u>unreasonable</u> application is different from an <u>incorrect</u> application of federal law . . . In § 2254(d)(1), Congress specifically used the word "unreasonable," and not a term like "erroneous" or "incorrect." Under § 2254(d)(1)'s "unreasonable application" clause, then, a federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable.

Id. at 410-11 (emphasis in original).

### 2.  Applicable law on ineffective assistance of counsel claims

Review of a claim of ineffective assistance of counsel involves a two part analysis.

A petitioner alleging ineffective assistance of counsel first must show that counsel "made errors so serious that counsel was not functioning as the counsel guaranteed the defendant by the Sixth Amendment." <u>Strickland v. Washington</u>, 466 U.S. 668, 687 (1984). There is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance. Id. at 689. Reasonableness is judged as of the time of counsel's conduct, not in hindsight.[3] Id. at 689-90. The reasonableness of counsel's actions "may be determined or substantially influenced by defendant's own statements or actions." Id. at 691.

The second part of the analysis looks at the consequence of any error counsel is found to have

---

[2]The Court has also noted that a state-court decision may be an unreasonable application of clearly established federal law if "the state court was unreasonable in refusing to extend the governing legal principle to a context in which the principle should have controlled." <u>Remdass v. Angelone</u>, 530 U.S. 156 (2000).

[3]"Judicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proven unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." <u>Strickland</u>, 466 U.S. at 689.

8 - FINDINGS AND RECOMMENDATION

made. The error must have been "so serious as to deprive the petitioner of a fair trial, a trial whose result is reliable." Id.

"An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. The petitioner must affirmatively prove the prejudice. Id. at 693. "It is not enough for the [petitioner] to show that the errors had some conceivable effect on the outcome . . ., and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Id. However, a petitioner "need not show that counsel's deficient conduct more likely than not altered the outcome of the case." Id. The petitioner must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. Id.

Unless a petitioner shows both error and prejudice, "it cannot be said that a conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." Id. at 686.

## B.   Analysis in this case

In ground three of his petition, petitioner alleges that his appellate counsel failed to advise him that he potentially faced a harsher sentence on remand if he appealed the denial of his motions to suppress, and argues that this failure constitutes constitutionally defective assistance of counsel.

Petitioner raised this issue in his state post-conviction proceeding. The post-conviction court, applying the Strickland standard, denied relief. In its opinion, the court noted that:

> While petitioner's claim is interesting, the fact is that Measure 11's constitutionality was still at issue when his attorneys spoke to him about appealing his sentence. They could have known that it would be held constitutional though such would have been a risk. It cannot be said then that error existed for any encouragement to appeal. Moreover, here today at PCR trial, there is no prejudice as the only relief would be a new sentencing, and that sentencing would have to be under Measure 11. Since petitioner would get the same as he already received, he cannot benefit from relief,

9 - FINDINGS AND RECOMMENDATION

> and no prejudice occurs.
>
> Moreover, the pleadings of petitioner are general legal conclusions unsupported in the pleadings by specifics. Petitioner's testimony generally supports his attorneys . . . Petitioner has not plead with specificity.
>
> Petitioner did not meet his burden as to this claim, and showed no prejudice.
> . . .
> Petitioner has not shown that Appellate Counsel was ineffective.

PCR Memorandum of Opinion/Findings and Conclusions (#25, Ex. 129) at 2, 6.

Petitioner argues that this decision was contrary to the standard established in <u>Strickland</u>, and that "under the correct analysis" counsel's performance should be found inadequate.[4] However, the PCR court's conclusion was neither contrary to, nor an unreasonable application of, <u>Strickland</u>, and counsel's performance did not violate petitioner's Sixth Amendment right to effective assistance of counsel.

In assisting a client on the question of whether to appeal, counsel has a responsibility to provide the client with information and advice to ensure that the decision was made knowingly and voluntarily. <u>Roe v. Flores-Ortega</u>, 528 U.S. 470 (2000); <u>see</u> also <u>Hill v. Lockhart</u>, 474 U.S. 52 (1985). In examining the issue on review, a court considers whether a proper consultation took place, and, if not, whether upon being properly advised it can reasonably be said that the client would have taken different action. <u>Flores-Ortega</u>, <u>supra</u>, at 484.

---

[4] Petitioner believes that the PCR court failed to apply the correct standard because in stating its conclusion that appellate counsel was not ineffective, the court quoted from a state case that dealt with the adequacy of appellate counsel in cases where counsel allegedly failed to bring appropriate claims on appeal. PCR Memorandum of Opinion/Findings and Conclusions (#25, Ex. 129) at 6. However, it is clear from a full reading of the opinion that the court did, in fact, consider petitioner's claims as he raised them - including the claim that counsel was ineffective for failing to advise petitioner to drop his appeal to avoid a harsher sentence. <u>See</u> PCR Memorandum of Opinion/Findings and Conclusions (#25, Ex. 129) at 2 ("It cannot be said then that error existed for any encouragement to appeal.").

10 - FINDINGS AND RECOMMENDATION

It is clear that, at the time petitioner filed his appeal and during the first part of its pendency, the constitutionality of Measure 11 was uncertain. See Response to Petition (#27) at 17 (collecting cases). Indeed, in petitioner's own case, the sentencing judge found it to be unconstitutional. It appears from the record that appellate counsel did not discuss with petitioner before he filed his appeal the possibility of a longer sentence following an appeal, should Measure 11 be found to be constitutional while the appeal was pending. Counsel provided an affidavit to the state PCR court that stated, in relevant part:

> In litigating his appeal, my goal was to have his case remanded for a hearing and decision on the merits of the suppression motions the trial court declined to address pretrial. I assumed that if on remand Alvarez' suppression motions were denied and his convictions were affirmed, the trial court could not increase his sentence. See State v. Turner, 247 Or. 301, 313, 429 O.2d 565 (1967) ("[a]fter an appeal . . . has resulted in the ordering of a retrial for errors other than an erroneous sentence . . . and the defendant has again been convicted, no harsher sentence can be given than that initially imposed."). Consequently, I foresaw no risk in pursuing the appeal.
>
> Although I was successful in having his case remanded for a hearing and decision on the suppression motions, the Court of Appeals opinion in his case shows that I was wrong in assuming that his sentence could not be increased. In retrospect, before filing his brief I should have discussed with Alvarez the risks of his continuing his appeal. Had I done so, he may have decided to dismiss his appeal, to try to minimize the risk of having his sentence increased.

Affidavit of Jesse Wm. Barton (#25, Ex. 120) at 1-2. However, after submitting this affidavit, counsel "became concerned that [his] recollection of events in petitioner's first direct appeal were incomplete." Letter from Jesse Wm. Barton (#126) at 1. After reviewing his file, counsel located a letter that he had sent to petitioner while the appeal was pending, after the Huddleston decision had been issued. He noted that although the letter did not "emphatically warn" petitioner of the risks of continuing the appeal, it did "intimate that there [was] a chance that his lesser guidelines sentence might not hold up." Id. at 2. Specifically, the letter to petitioner stated, in relevant part:

11 - FINDINGS AND RECOMMENDATION

> I do not know if the state filed a mandamus action against Judge Courson, to try to get the Oregon Supreme Court to order him to resentence you [under] Measure 11. If it did not, then as with your other case, it may be too late for the state to do so. If it is too late for the state to file a mandamus petition, then there is a good chance your guidelines sentence will stick - that you will never be sentenced under Measure 11.

Id., at Ex. 2.

Thus, while petitioner's appeal was pending, it is apparent that he was advised by appellate counsel that there was at least a possibility that his guidelines sentence would not stick.[5]

Furthermore, petitioner's trial attorney, while not having a specific recollection of the case, noted that "[a]s for any adverse appellate consequences should he appeal, I am sure that I advised him of his rights and his liabilities if he should go forward." Letter from Michael Breeden (#25, Ex. 125) at 1.

Given that petitioner was advised that there was at least a chance that his sentence would not stick, and that at the time the appeal was taken it was unclear whether Measure 11 would be found to be unconstitutional, this court cannot say that the state court's finding that appellate counsel was not ineffective for failing to more strenuously suggest that possibility to petitioner is contrary to or an unreasonable application of Strickland. "Strickland does not mandate prescience," Sophanthavong v. Palmateer, 378 F.3d 859, 870 (9th Cir. 2004), and counsel is "not required to predict accurately how the Oregon courts would resolve" a specific question. Id. In this case, appellate counsel's performance "was not so unreasonable as to overcome the presumption that, under the circumstances, counsel's conduct was within the wide range of competent professional assistance. LaGrand v. Stewart, 133 F.3d 1253, 1274 (9th Cir. 1998).

---

[5]However, it is noted that during his deposition, petitioner denied ever being informed that he might face a longer sentence. Deposition of Manual Alvarez (#25, Ex. 124) at 12.

12 - FINDINGS AND RECOMMENDATION

Even were this court to find the PCR court's determination on whether counsel's performance was deficient to be contrary to law, petitioner has not met his burden of demonstrating that prejudice attached to such deficient performance. Whether petitioner would have been subject to resentencing under Measure 11 regardless of the decision to appeal is a matter of state law. In ruling on petitioner's second direct appeal, the Oregon Court of Appeals noted, inter alia, that:

> Given that Ballot Measure 11 requires the imposition of a minimum 90-month sentence, the 55-month sentence that the trial court originally imposed was, as a matter of law, erroneous.

State v. Alvarez, 168 Or.App. 393, 397 (2000). In such a case, the sentencing court retains authority to subsequently modify the sentence to correct the erroneous term. ORS 138.083; see also State v. Horsley, 168 Or.App. 559, 562 (2000) ("A trial court has a duty to pass sentence in accordance with the pertinent sentencing statutes, . . . and a sentence's validity is determined solely by how well it comports with those statutes. . . . In this case, . . . the initial sentence was not in accordance with the appropriate sentencing statutes and, thus, was invalid. The trial court had, in fact, failed to pronounce any sentence, and retained authority to impose one.") (citations and quite marks omitted). In other words, petitioner had no right under state law to keep the original unlawful sentence.[6] While petitioner argues that the possibility exists that neither the district attorney nor the court itself would seek to correct petitioner's sentence, and therefore it might have stood but for the appeal, this is far from certain. Petitioner has not shown that he was prejudiced by the alleged deficient performance of appellate counsel.

---

[6] The court also notes that petitioner had no constitutional right to keep the unlawful sentence. See, e.g., Bozza v. United States, 330 U.S. 160 (1947) (finding that correction of an invalid sentence by increasing the punishment did not constitute a double jeopardy violation, because the more severe sentence was the first valid judgment imposed); see also Mathes v. United States, 254 F.2d 938 (9th Cir. 1958).

13 - FINDINGS AND RECOMMENDATION

## CONCLUSION

Petitioner has procedurally defaulted his first and second grounds for relief, and has not demonstrated cause or prejudice to excuse such default. As such, those grounds for relief should be dismissed. Further, deference is owed to the state court's conclusion that the performance of petitioner's appellate counsel was not constitutionally inadequate, and petitioner has not demonstrated that prejudice resulted from counsel's alleged deficient performance. As such, relief on petitioner's third ground should be denied.

DATED this 20th day of April, 2006.

Thomas M. Coffin
United States Magistrate Judge